Good morning, everyone. Good morning, Judge Shoflak. Can you hear us? Yes. Excellent. Happy that everyone was able to make it. I hope everyone was safe and sound through our recent bad weather. We have four appeals to hear this morning. The counsel were familiar with your cases. We've read your briefs, the authority cited in your briefs, and have looked at at least portions of the record. So feel free to get straight to the heart of the argument that you want to leave us with this morning. Do pay attention, though, to the traffic lights, and when the red light shines, it is time to wrap it up. If you're answering a question from the court, you won't lose any rebuttal time. You'll be on our time, if you have rebuttal time. We're going to begin with United States v. Irons, Ms. Howard. Thank you. Good morning, Your Honors, Counsel, and may it please the Court. I'd like to start with the four-level enhancement for possessing a firearm in connection with another felony offense. This is a unique case where we have a single act, Mr. Irons having the firearm in the nearby fanny pack that was illegal under both the federal Felon in Possession statute and the Florida Concealed Carry statute because Mr. Irons was a felon. To understand why this overlap means that he did not possess his firearm in connection with another felony offense, it helps to understand the main offense, the offense that Mr. Irons was sentenced for under 2K2.1. We need that comparator because the enhancement requires another offense, i.e., one that is distinct or different. Yeah, but these are kind of conceptually distinct, are they not? It's one thing to have ownership, dominion, or control over the firearm when you have the status of a felon. It's another thing to conceal it, which is what the Florida offense is about, as I understand it. So I think, to Your Honors' question, goes to the government's argument, which is that these are different elements, right? The different statutes have different elements. But that's not the only way to conceive of an offense, and the guidelines don't treat the offense in the abstract. So here, Mr. Irons' possession, his actual possession, was the firearm in the fanny pack. Was there another way that he could have possessed the firearm under sort of, could there be a least culpable constructive possession way? Yes. But that wouldn't have been his offense. But he could have had it just on his person in a visible manner. Any possession would have been an offense. Having it in the fanny pack, though, means that it's a different kind of offense under Florida law, right? Well, it's arguably, I understand that the concealment courts see that as a more aggravated way to possess, right? I think that his possession— Well, it's not just courts. I mean, that's the point of the Florida statute, right? Well, the Florida statute was amended in 2023 before Mr. Irons' offense. So it's now, it's a permitless carry state. So the reason— I mean, that's kind of beside the point. Well, I think that in both cases, his felon status is the reason that this particular conduct was illegal. So the guidelines look at his offense. I understand there's ways, different ways to define an offense. It can be the elements, right, just possession. But it also can be how an individual engaged, the conduct and individual engagement on a specific occasion. And that's how the guidelines in general and 2K2.1 in particular, I believe, treat offenses. And there's a couple points I'd like to make there on that. One thing I want to make sure you don't, that you devote some time to is your argument about the error in imposing conditions of supervised release. Well, before you get there then, I am curious about what distinction, if any, exists between mere possession, which it appears was your client's situation here in terms of the Florida statute, as opposed to the enhancement, which in our case law, would speak to facilitation of. And that's where I am having some challenge. Absolutely, Your Honor. And Your Honor makes a great point. The enhancement is not just another felony offense, but in connection with another felony offense. And this court has construed the in connection with language to require facilitation or the potential to facilitate. Here, the firearm possession could not facilitate itself. The firearm could not facilitate its own possession. And the firearm could not, Mr. Irons could not have used the firearm to further his concealment offense because using it would have revealed the weapon, ending the concealment and ending the crime. But the question, right, is whether the Florida offense, the concealment offense, facilitates the federal offense, right? I disagree with that, Your Honor. I believe it's whether his federal, his possession facilitated the other felony offense. In this case, if Your Honor, the concealed carry. So in this case, the firearm possession itself could not facilitate the concealment. And so with that, Your Honor, I will turn to the supervised release conditions that Chief Judge Pryor asked about. Because at the very least, the court should vacate the supervised release portion of Mr. Iron's sentence because the written judgment included two supervised release conditions that the district court did not include in his oral pronouncement, a computer search condition and a GED condition. As to the search condition, at sentencing, the court specifically listed the places to be searched and it did not include a computer. And contrary to the government's argument, the computer search requirement is not subsumed within the residence requirement. We know this on a very basic level because the written judgment, the district court listed the computer search separately, so the district court saw it as separate. As to the GED condition, the district court during sentencing discussed Mr. Iron's working on a GED during his time in the BEOP, but that was after the discussion of the supervised release conditions. I believe it was separated by a discussion about forfeiture. And the court never tied that discussion about the GED during BEOP to a supervised release condition, which is punishable by potential imprisonment. Let's just say, and speaking only for myself, I agree with you in terms of the error. It seems that if you had a situation where the district court had said something during the sentencing that wasn't memorialized, then that would just be an easy fix. But what happens, and maybe our case law speaks to this, when you have a situation where the words appear in writing but aren't in the transcript, what are we supposed to do? So when there's an unambiguous conflict between the oral pronouncement and the written pronouncement, my understanding is that the oral pronouncement governs. That's our position in this case, that because there was a specific discussion of search conditions and a specific discussion about the GED, showing that the district court was aware of these facts, but specifically did not include them in its oral pronouncement, that it excluded them. That being said, if the court has any question, another remedy would be to remand to let the district court clarify its intent in the first instance, and Mr. Irons would welcome the opportunity to explain to the district court why those two particular conditions are not reasonable in his case. Well, if we go back to your facilitation point earlier, so I take your point that it's the opposite way, but you could not conceal unless you possessed, right? So the possession does facilitate the other offense, doesn't it? Well, I think it would be a strange way to talk about facilitation if facilitation is like a necessary element, which is what it is in this case, right? The possession is certainly necessary to violate the Florida concealed carry statute, but facilitation suggests that you're making something easier. And I think in the Brooks case, this court held that just because a firearm was an essential element or component of the crime, in that case the fruit of the crime, that was not enough. It still needed to have a way to facilitate or have the potential to facilitate to make that other crime easier. And here, we don't have that additional facilitation potential. So, to the extent your recognition of a change in the law is relevant, is it that if Florida didn't require concealment of the weapon, would that therefore not justify an enhancement? I understand your position, it doesn't justify concealed or not, but would your point be even stronger based on the laws that exist today? So as I understand the laws that exist today to violate the Florida concealed carry statute, Mr. Irons had to have the firearm on or about his person, which I think is equivalent to actual possession under federal law, and it had to be concealed from ordinary sight. And then, he had to be disqualified from having the firearm. In this case, it was his felon status. So in that way, if you are looking at it sort of under those sort of broad strokes, I do think it could be even closer to your Honor's question if concealment wasn't required. But in Mr. Irons' case, the concealment is making it essentially an aggravated version of the possession. So even if you're looking at it in that way, I think it's not a separate offense, right, but arguably a more aggravated version of a possession offense. And I would point out that the Commission has ways to address these kinds of aggravated offense conduct. It does it regularly in the guidelines, including in 2K2.1. It looks at how the individual offender committed his offense and the facts of his offense and enhances based on that. And the Commission could do that if it thought that concealment warranted an offense, plus two if any firearm was concealed, plus two. What do we do with what the Supreme Court said in Smith when it said that a firearm facilitates an offense where the offense, quote, would not have been possible without it? So my understanding of Smith, Your Honor, is that that was a barter situation. But if I remember correctly, and I certainly could be misremembering, the barter was to obtain drugs and then the drug trafficking offense was possession with the intent to facilitate, intent to distribute. So the barter was making the other felony offense and that drug trafficking offense easier. It was helping him get to meet his drug trafficking offense. But it wasn't the barter itself. And it certainly, the gun wasn't an element of that. But if what the Supreme Court says is right, that the offense facilitates where it would not have been possible without it, the firearm possession facilitates the concealed carry offense, doesn't it? It does, but I think that we need to read the enhancement in its entirety, right? In connection with, facilitates another felony offense. And if the firearm possession is just necessary, right, then it risks, I think, collapsing the two offenses into themselves, which is what I do think in this very specific case where we have one act, Mr. Iron's possession was the possession in the fanny pack next to him that violated both statutes because he was a felon. And I see that I'm almost out of time unless the court has any further questions. You are on my time. Okay. Thank you, Ms. Howard. Let's hear from Ms. Taylor. May it please the court, Michelle Taylor for the United States. The district court correctly enhanced Mr. Iron's sentence under the 2K2.1b6b because Mr. Iron's possessed the firearm in connection with another felony offense, the violation of Florida's concealed carry law. As Judge Pryor was pointing out, this requires more culpable conduct than just being a felon in possession. Somebody can violate the felon in possession law with just constructive possession. The gun might be in the basement. It doesn't have to be, as in this case, carried and on the person, on or about the person, which under Florida law means readily accessible. It doesn't have to be concealed. How would you define the facilitation here? I mean, first, would you agree that you can commit two crimes without one of the crimes necessarily facilitating the other? Can that scenario exist? There might be situations where there's not facilitation, but I think here we have, we're right in the heartland of facilitation. The ordinary meaning of facilitation is to help bring something about, to make something possible or easier. And as the Supreme Court said in Smith, when the gun makes the crime possible, you have facilitation. Not possible, but easier. So here, if you can just break down, first, what is the order? Is it the being a felon in possession then leads to the concealment or the concealment and then the other? And then how is, let's say if it's the possession, how is that facilitating the concealment? I think the possession here facilitates, and part of the definition meaning to make something possible, facilitates because without the possession of the firearm, he couldn't have committed the concealed carry. Right. So now you have two crimes related arguably to a singular act. And I'm trying to understand how, I don't know if you understand what my struggle here is. So when the single act, the single course of conduct here, there's no requirement in the definition that prohibits this guidelines application when the two violations come from a single course of conduct. Here we have additional elements under Florida law that he also violated. So he possessed the firearm here in a more dangerous way. As this court recognized in the Hall decision, when it was looking back in the old days when we had a residual clause, the court pointed out that there's a substantial difference in terms of the likelihood of immediate violence flowing from the crime between the offense of carrying a concealed firearm and the offense of possessing a weapon as a convicted felon. So the guideline here is meant to capture that sort of more culpable and dangerous conduct. We have in connection with, and we have, this is another felony offense. It's a distinct crime. He wasn't doomed to commit the Florida crime by the mere fact that he's a felon in possession. So for both of those reasons, the enhancement was properly applied here. That's a broad definition. I'm sorry, you said earlier he wasn't deemed, doomed to violate the Florida law merely by being a felon in possession? Exactly. Like he could have violated the felony. Because he didn't have to conceal it, is that right? Right. Or actively carry. You know, carry it on about her person. Both of those are different requirements. So the concealment, the carrying on or about his person, and concealing it from ordinary sight, all those enhance the dangerousness and make the enhancement appropriate here. So given that Florida law, and I realize we're dealing with the law as it existed at the time, but it is the concealment. So if he hadn't concealed it, then he wouldn't have a separate Florida offense, you're saying? Or how would that work? Right. If he hadn't concealed it, he wouldn't have violated this additional Florida crime. So we wouldn't have had the basis for the enhancement there. The whole nature of the enhancement, though, as I understand it, is they're going to be, though conceptually distinct, closely related offenses. Or you wouldn't have a reason for the enhancement in the first place, right? That's correct, Your Honor. Is that the order that it works? I mean, don't you, you have to engage in the behavior to justify the enhancement. But again, it just seems that the second offense, whatever you call it in this scenario, has to be related to the facilitation of, whereas again, it seems we only, we have mere possession here, which covers both crimes, arguably. Well, I think, you know, we have the possession of the firearm is what makes the concealed carry offense possible. Like this is even, you know, we have facilitation, that's within one meaning of facilitation. This is more than facilitation, like this is integral. Going back to the Supreme Court's language, when it was looking at the similar phrase and that language then got incorporated into the guidelines commentary and incorporated in James when this court was looking at the plain language. If you go back to Smith and it says, make possible, that's what happened here. This concealed carry crime couldn't have been possible without his possession of the firearm. Which is different than facilitating, and this will be my last comment on this, which again, to what you just said, seems different than facilitating. The behavior of being a felon in possession could also violate the concealed weapon, but I don't think it naturally, as you're suggesting, equates to facilitation. Well, I think one definition of facilitation, in Webster's, for instance, it has to help bring something about in Cambridge to make something possible or easier. I think those definitions, you help bring about the concealed carry offense by possessing the firearm. You can't commit it without it. So the possession of the firearm makes it. Right, which means, which is different than facilitating the violation of two different offenses. But again, we might be speaking in circles at this point. I would like to turn to the supervised release conditions issue, since the court has expressed concern. Irons has not shown. Those, I mean, those conditions just were not pronounced. Well, I don't think we have an unambiguous conflict here. I think at most we have some ambiguity, and if there's ambiguity, you can consult the written judgment to clarify the district court's intent. The search condition was broad. It didn't, by its terms, unambiguously exclude computer searches. And it applies broadly to persons, residences, places of business. So there's nothing in that language that unambiguously told him that computer searches wouldn't have been included. And he could have said, I object, you know, could you please clarify, I don't think that search condition should apply to the computers in my house. And the court then could have said whether it did or didn't intend. But, you know, there was no objection, and now we can see the court's intent expressed in the written judgment. Similarly, when the court expressed his desire to obtain, the court's desire for Irons to obtain his GED, it's not surprising that the court memorialized that in the recommendations of the VOP, and then if he did not obtain his GED as a supervised release condition. I just want to point out, if he does what he told the court he was going to do, that is make productive use of his time in prison and obtain his GED, we'll have no reason to ever get to the supervised release condition. The conflict cases, the clear conflict cases, are very different than this situation. Like, a conflict case would be, the court says, you're subject to a six-year term of supervised release, the judgment says a three-year term. Or another example, the defendant cited a case where there was a discussion at the sentencing hearing about a domestic violence batterer's course. Isn't it true that if he owns a computer, based on the written judgment, that the defendant's computer would be subject to search, no matter where it is? Yes, Your Honor, that's true. So it wouldn't matter whether it was on his person or at his residence or place of business or storage unit or vehicle, no matter where it is, it would be subject to search, right? See the problem? I hear what you're saying, Your Honor. But then let me say, if there was a conflict, the remedy is not to strike the conditions as the defendant has requested. You can see this when Judge Abudu asked what— As I understood, your friend on the other side, when she finished up, sent it back to the district court, and the district court, you know, we can do this, we can have a do-over, and he can have an opportunity to explain why that condition should not be imposed on him. That seems to me the right approach, right? Well, that's what the court did in Rodriguez when it found that the conditions weren't adequately pronounced. It said that on remand, the district court may, after giving Rodriguez an opportunity to be heard, reconsider whether to impose each of the discretionary conditions. I do think it does—I do want to point out— That's kind of an odd condition, the computer condition, in this kind of case. This isn't, you know, this isn't a child porn case or, you know, a fraudster. You know, saying the computer condition is a little odd here. This court has upheld the computer condition as applied to a recidivist felon. And, you know, this is the place where he did have notice because the PSR itself, paragraph 101, pointed out that he could be subject to a search condition. So this wasn't a place where he didn't know that this could come into play. He didn't know this condition, this search condition, was coming into play, though. Well, again, because of the breadth of the search condition, he could have, at that point, objected. I pointed out to you, Ms. Taylor, that the breadth of that condition does not necessarily include this particular condition. I hear what you're saying, Your Honor. And in that case, the remedy, again, would not be to strike, but to allow the district court the opportunity to hear. We could have a do-over where you could have a record about it, right? And he clearly had not required him, and the oral pronounced it, to obtain a GED, right? They talked about the intent. Like there was a big – this was part of defendant's plea for leniency, and the court then said, I want you to obtain your GED. I want you to. Right. That's different from your requirement. Right. But when you think about the purpose of – I want him to write his mother every week. I want him to do a lot of things and never to come back to the court. When you think, though, about the purpose of the notice so that the defendant has the opportunity to object, it would have been really bizarre to imagine an objection in this context because the defendant, as part of his plea for leniency, told the court he wanted to obtain his GED and told the court he wanted to be productive in prison. So if the court had then voiced this condition and the defendant had said, I object, that would mean that he necessarily wasn't going to do what he just told the court he was going to do. Well, you don't know. I mean, that's taking us down a long line. And my request for clarification is that you were suggesting that the PSI or PSR provides the necessary notice for what then appears in writing. Am I correct that's your position, or maybe you were just speaking too broadly? So I'm just distinguishing our case from the no-notice cases. Like in Rodriguez, the court didn't pronounce any conditions at all. All it said was there's a term of supervised release. There wasn't anything in the PSR. There wasn't anything to put the defendant on notice of what these conditions would look like. I think this is a different situation because the PSR did flag the search condition, and the court pronounced a broad search condition. So you are saying, then, that the PSR satisfies the notice requirement? I'm saying it's something that the court took into account in Rodriguez. I understand Judge Pryor's point that the PSR didn't say computer search. It referred to a search condition, and if you look at the guideline search condition, that reaches computer searches, but it didn't expressly say that. Well, and my problem, too, with the GED requirement is that it will be a violation of his supervised release. He could be revoked, right, if he doesn't obtain his GED, as I understand this record, right? Potentially he could be, but this GED— And that's not something he was warned about. He was told about it at sentencing. But it's very—I think from this record it looks unlikely that this would ever come into play because he left school in 12th grade. One thing—I mean, it may well be that he's going to do it on his own, but whether it's a requirement of supervised release where he's at risk of losing his liberty again if he fails to do it is a different matter. Thank you. So we'd ask the court to affirm. Thank you, Ms. Taylor. We understand your argument. Ms. Howard, you saved a few minutes for rebuttal. Thank you, Chief Judge Pryor. Just a few points, just briefly on the facilitation point that we were discussing. I did want to just make clear that I understand the language of integral to, right? But I think that there is a difference between integral to and, in this case, where an element of, an absolute element and necessary, and in Brooks. I mean, you know, I'm having a hard time understanding how your argument works. I mean, the nature of this enhancement is these are going to be closely related but conceptually distinct offenses, right? For one to qualify as the enhancement because it facilitated the other. And, you know, if we take your argument, it seems to me we're just basically destroying the enhancement. I don't think so, Your Honor. I understand the concern. But this is a really narrow case where there's only one, you know, my friend on the other side referred to it as a course of conduct, but I would push back on that. There was one act. There was one possession. And when you look at what the government said, it would prove to prove his possession because, in that case, it was that the gun was in the fanny pack next to him in the car. That was how the government was going to prove possession, and that was his factual basis. Those are the same facts the government said proved that he had concealed carrying at sentencing. So this is a very unique case where we have one specific act. And I think, in general, we can— He would have violated the federal law, right, but not the Florida law. It would have, Your Honor, but that's not Mr. Irons' offense. That's not his possession. The way he possessed it was a— The way he possessed it. The way he possessed it. The way he possessed it also happened to violate a state law. That's true, Your Honor, but I think there's many, many overlapping and duplicative statutes, and the sentencing guidelines even talk about that. The guidelines are written to describe conduct, not track pure statutory elements, and I think it could reach a level of absurdity if we're only looking for potentially different elements to make it another felony offense when it's the individual's one single act. What the guidelines are supposed to be doing, at least from my experience, is they're supposed to be identifying offenders who are more culpable than others to guide judicial discretion at sentencing. And when we—It's one thing for a felon to possess a firearm, but when you're concealing it, too, in violation of state law, the guidelines are saying that makes you a more culpable offender as opposed to a less culpable offender. I absolutely agree with that, Your Honor, and I certainly would never want to get into a debate with you about the meaning of the guidelines and what they're doing, and I won't do that here. So I'll just briefly say that I do think the guidelines account for culpability, and when they do, they refer to the offense, right? So even in 2K2.1, if the defendant knew a gun was involved, the offense wasn't marked with a serial number. If the offense involved a semi-automatic firearm capable of accepting a large-capacity magazine, that's a state felony in many states, right? But it's the offense even for someone who possesses a firearm as a felon. So with that, I'll just briefly turn to the supervised release conditions and just note that we maintain that Mr. Irons did not have notice of these two conditions. The district court specifically listed what was to be searched. The computer was not included. That suggested, at the very least, that it was not included. And, you know, in these cases, Your Honor, as identified correctly, this is a firearm offense. Usually judges have scripts, right? And something like that would not be concluded. Thank you, Ms. Howard. We understand your case, and we're going to move on to our second case. Thank you. Thank you.